UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HABIBUR RAHMAN, <br><br>　　Plaintiff, <br><br>　　v. <br><br>ANTONY J. BLINKEN, *et al.*, <br><br>　　Defendants. | Civil Action No. 22-2732 (JEB) |

## MEMORANDUM OPINION

Plaintiff Habibur Rahman is a Bangladeshi citizen who awaits a decision on his application for an F-1 visa, which he needs in order to enter the United States and enroll in a Master of Business Administration degree program. He contends that the eleven months that he has waited for his visa to be issued or finally refused constitutes an unlawful delay and asks the Court to order the Government Defendants — a group of officials across several federal agencies — to act. Defendants now move to dismiss. Because the Court finds that a decision on Rahman's visa application has not been unreasonably delayed, it will grant the Motion.

**I.　Background**

The Court begins with an overview of the process for obtaining an F-1 visa and then turns to the background of Plaintiff's claims and the procedural history of the case.

The F-1 visa is a nonimmigrant "Academic Student" visa that allows a foreign citizen to travel to the United States as a full-time student in an accredited educational program. See U.S. Citizenship and Immigr. Servs., Students and Employment, bit.ly/3H4odBd [https://perma.cc/NE5V-X3Z4]; 8 U.S.C. § 1101(a)(15)(F). As the F-1 visa is a nonimmigrant

1

visa, F-1 visitors return to their country upon completion of their program.  Id.; see also generally Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec., 50 F.4th 164, 170–71 (D.C. Cir. 2022).

To obtain an F-1 visa, an applicant must complete an in-person interview with a consular officer.  See 8 U.S.C. § 1202(h) ("[T]he Secretary of State shall require every alien applying for a nonimmigrant visa" to appear for an interview.).  Following such interview, a consular officer "must issue the visa, refuse the visa, or," in circumstances inapplicable here, "discontinue granting the visa." 22 C.F.R. § 41.121(a).  The officer need only make an initial, rather than a final, determination about an applicant's visa eligibility.  In other words, under § 221(g) of the Immigration and Nationality Act (INA), an officer can temporarily refuse to issue a visa in order to allow for further administrative processing of an applicant's case if the officer needs more information or time to determine eligibility.  See 8 U.S.C. § 1201(g); U.S. Dep't of State, Administrative Processing Information (last visited Jan. 13, 2023), https://bit.ly/2GO3jEg [https://perma.cc/NK8K-9U8H].  The Department of State publishes visa-application statuses online.  As relevant here, beginning in March 2020, the Department changed its website to display the status of applications undergoing further administrative processing as "refused." U.S. Dep't of State, Visas: CEAC Case Status Change (March 5, 2020), https://bit.ly/3DkqCWP [https://perma.cc/K8XQ-F6UY] (Status Change Memo).  This reporting change in such circumstances reflects "no change in such applicants' actual cases."  Id.

Plaintiff is a Bangladeshi national who requires an F-1 visa to enroll in an American MBA program.  See ECF No. 1 (Compl.) at 9, ¶¶ 1–2.  He interviewed for the visa at the U.S. Embassy in Bangladesh and thus completed his application in January 2022.  Id. at 9, ¶ 7.  Since then, his application has remained in administrative processing.  Id. at 10, ¶ 12.  Believing that

Defendants have unreasonably delayed the processing of his visa, Rahman brings this action under the Mandamus Act against nine officials across the Departments of State, Justice, and Homeland Security. Id. at 6, ¶¶ 11–20; 11, ¶¶ 32–35. He notes the emotional distress that the delay has already caused him and emphasizes that he will suffer additional distress, along with professional and financial harm, if a decision is further delayed. Id. at 10, ¶¶ 13–16. The Government now moves to dismiss. See ECF No. 7 (MTD).

## II.   Legal Standard

Defendants' Motion to Dismiss invokes Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a plaintiff may survive a Rule 12(b)(6) motion even

if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

### III.     Analysis

As a threshold matter, the Court notes that the underlying facts here are nearly identical to those in Khan v. Blome, No. 22-2422, 2022 WL 17262219 (D.D.C. Nov. 29, 2022), and Sawahreh v. United States Dep't of State, No. 22-1456, 2022 WL 4365746 (D.D.C. Sept. 21, 2022), cases in which this Court recently dismissed other student-visa applicants' undue-delay claims under the APA. Rahman brings this action under the Mandamus Act, but "[t]he standard for undue delay under the Mandamus Act [in this context] . . . is identical to the APA standard." Kangarloo v. Pompeo, 480 F. Supp. 3d 134, 142 (D.D.C. 2020). And there is no relevant difference between the student visa Plaintiff seeks here (the F-1, the general student visa) and those that the plaintiffs in those cases sought (the J-1, for funded educational-exchange programs); both require the same consular-interview process.

In those cases, this Court rejected two threshold arguments that the Government had raised — namely, that plaintiffs lacked standing and that consular administrative-processing decisions are non-reviewable. Apparently undeterred, Defendants raise those same preliminary assertions here. The Court assumes that Defendants wish to maintain those positions for the sake of consistency or to preserve the record, but it will nonetheless adhere to its prior rulings and reject those contentions again.

First, for the reasons articulated in Khan, the Court holds that Plaintiff has standing. See 2022 WL 17262219, at *3. Just as there, Plaintiff seeks to vindicate a procedural right to reasonably expeditious agency action that is tethered to his concrete professional and financial

interest in earning an advanced degree. See id. Defendants "urge the Court to reconsider that view," but proffer substantially the same arguments that the Court has already discarded. See ECF No. 10 (Reply) at 3; compare id. at 3–4, with Khan, 2022 WL 17262219, at *3.

Second, for the reasons articulated in Sawahreh and reaffirmed in Khan, the Court again concludes that the consular non-reviewability doctrine does not bar review of undue-delay claims related to visas mired in administrative processing. See Khan, 2022 WL 17262219, at *2; Sawahreh, 2022 WL 4365746, at *3–4. "As [Plaintiff's] case remains in administrative processing and has not been finally refused, the doctrine of consular non-reviewability is inapplicable to this claim, as Plaintiff does not seek review of any decision but instead of the Government's failure to decide." Khan, 2022 WL 17262219, at *2 (quoting Sawahreh, 2022 WL 4365746, at *3–4). Defendants recognize that this Court has concluded as much and fail to offer a fresh reason to reconsider that conclusion. See Reply at 6.

The Government's remaining and principal arguments are that Plaintiff fails to state a claim for unreasonable delay and has sued officials who cannot provide relief. Because the Court agrees with the former, it may skip the latter.

The thrust of Rahman's suit is that Defendants have unreasonably delayed the adjudication of his application for an F-1 visa because they have been sitting on it for eleven months. He contends that such delay is unreasonable within the meaning of the APA, thus justifying mandamus relief. See Compl. at 3–4, ¶¶ 4–5; see also Kangarloo, 480 F. Supp. 3d at 142 (noting that in this context undue-delay standard under Mandamus Act is same as under APA). Defendants rejoin that any delay in processing Rahman's application is not yet unreasonable. The Court agrees.

To evaluate the reasonableness of agency delay, the Court examines six factors set out in Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (internal quotation marks and citations omitted); see also Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003). These six factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider." Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd., 750 F.2d 81, 86 (D.C. Cir. 1984). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Mashpee, 336 F.3d at 1102.

It is appropriate to resolve this issue at the motion-to-dismiss stage because "this record contains enough facts to evaluate the TRAC factors now." Sarlak v. Pompeo, No. 20-35, 2020

6

WL 3082018, at *5–6 (D.D.C. June 10, 2020) (collecting cases and evaluating TRAC factors on motion to dismiss); see also Dastagir v. Blinken, 557 F. Supp. 3d 160, 168–69 (D.D.C. 2021); Zandieh v. Pompeo, No. 20-919, 2020 WL 4346915, at *8 (D.D.C. July 29, 2020).

The considerations contemplated by the TRAC factors can be grouped into four basic inquiries. "First, is there any rhyme or reason — congressionally prescribed or otherwise — for [an agency]'s delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the [agency] to act (factors three and five)? [Third], how might forcing the agency to act thwart its ability to address other priorities (factor four)?" Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

The only salient factual difference between this case and Sawahreh is that even less time has passed without a decision here. See 2022 WL 4365746, at *1 (decision delayed by fifteen months, as opposed to eleven here); see also Kahn, 2022 WL 17262219, and *2 (analyzing seven-month delay the same way). The Court will thus rely on its reasoning in Sawahreh in assessing the TRAC factors. As the Court explained in that case, the first two factors favor Defendants because "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Sawahreh, 2022 WL 4365746, at *5 (quoting Sarlak, 2020 WL 3082018, at *6 (citation omitted) (collecting cases)). Here, recall that Rahman has been waiting for only eleven months. By contrast, factors three and five favor Plaintiff because of the emotional and professional harm that this delay inflicts upon him. The fourth factor carries the most weight here, as courts have held it does in most cases, and favors Defendants. See Milligan v. Pompeo, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). "Plaintiff's application is delayed because of

'resource-allocation decisions' that 'do not lend themselves to judicial reordering[s] [of] agency priorities.'"  Sawahreh, 2022 WL 4365746, at *6 (alteration in original) (quoting Milligan, 502 F. Supp. 3d at 319).  Finally, as Rahman does not allege that this delay is intentional or due to any impropriety, see generally Compl., "the good faith of the agency in addressing the delay weighs against equitable relief."  Milligan, 502 F. Supp. 3d at 319 (internal quotation marks omitted).  As a result, just as in Sawahreh and Kahn, "[t]he balance of these factors currently tilts against the Court's intervention in this case."  Sawahreh, 2022 WL 4365746, at *7.

The Court nonetheless "recognizes that the delay is substantial and imposes hardship on Plaintiff[], and it encourages the Government to act on the application as soon as possible."  Didban, 435 F. Supp. 3d at 177.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 17, 2023